**Executive Risk Indemnity Inc.**
Home Office
32 Loockerman Square, Suite L100
Dover, Delaware 19901

*Administrative Offices/Mailing Address:*
82 Hopmeadow Street
Simsbury, Connecticut 06070-7683

**THIS IS A CLAIMS MADE INDEMNITY POLICY WITH EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE POLICY CAREFULLY.**

# DECLARATIONS

| POLICY NUMBER |
|---|
| 751-080581-97 |

# DIRECTORS, OFFICERS AND TRUSTEES LIABILITY INSURANCE INCLUDING HEALTHCARE ORGANIZATION REIMBURSEMENT POLICY

**NOTICE: THIS IS A CLAIMS MADE INDEMNITY POLICY WHICH APPLIES ONLY TO ANY "CLAIM" FIRST MADE DURING THE "POLICY PERIOD" AGAINST THE "INSUREDS" FOR A "WRONGFUL ACT". THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY "DEFENSE EXPENSES", AND "DEFENSE EXPENSES" SHALL BE APPLIED AGAINST THE RETENTION. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE UNDERWRITER TO DEFEND ANY "INSURED". THE COVERAGE AFFORDED BY THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED BY MOST OTHER POLICIES. PLEASE READ CAREFULLY.**

| ITEM 1. PARENT ORGANIZATION – NAME AND PRINCIPAL ADDRESS: | ITEM 2. POLICY PERIOD: |
|---|---|
| Lifespan Corporation<br>167 Point Street<br>Coro Building<br>Providence, RI 02903 | (a) Inception Date: October 1, 1997<br>(b) Expiration Date: October 1, 1998<br>at 12:01 a.m. at the Principal Address in ITEM 1. |

**ITEM 3. LIMIT OF LIABILITY** (Inclusive of **Defense Expenses**):
$ 25,000,000.00 maximum aggregate Limit of Liability for all **Claims** made during the **Policy Period**.

**ITEM 4. RETENTIONS** (Subject to IV. Condition (C) of the Policy):
(a) $0.00 each **Insured Person** each **Claim,** but in no event to exceed, in the aggregate,
$0.00 each **Claim** for all **Insured Persons** under Insuring Agreement A.
(b) $100,000.00 each **Claim** under Insuring Agreement B.
(c) $100,000.00 each Claim under Insuring Agreement C

**ITEM 5. PREMIUM:**
(a) Prepaid premium for coverage under Insuring Agreements A & B (included in (c) below).
(b) X Additional premium for coverage under Insuring Agreement C is included in (c) below; OR
_ No coverage is available under Insuring Agreement C.
(c) $165,000.00 Total Premium.

**ITEM 6. NOTICE REQUIRED TO BE GIVEN TO THE UNDERWRITER MUST BE ADDRESSED TO:**
Vice President of Claims
Executive Risk Management Associates
P. O. Box 2002
Simsbury, CT. 06070

**ITEM 7. ENDORSEMENTS ATTACHED AT ISSUANCE:**

| | | |
|---|---|---|
| C22901 | D21225 | D21529 |
| D21178 | D21279 | D22471 |
| D21187 | D21325 | D22651 |
| D21215 | D21414 | D22869 |
| D21217 | D21431 | D23129 |
| D21218 | D21499 | D24093 |

**These Declarations, the completed signed Application and the Policy with Endorsements shall constitute the contract between the Underwriter, the Insured Persons and the Insured Entity.**

EXECUTIVE RISK INDEMNITY INC. by (Attorney-in-Fact): October 15, 1997

**THIS IS A CLAIMS MADE INDEMNITY POLICY WITH EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.**

# EXECUTIVE RISK INDEMNITY INC.

## DIRECTORS, OFFICERS AND TRUSTEES LIABILITY INSURANCE INCLUDING HEALTHCARE ORGANIZATION REIMBURSEMENT POLICY

**Executive Risk Indemnity Inc. (the "Underwriter"), the Insured Persons and the Insured Entity, subject to all of the terms, conditions and limitations of this Policy, agree as follows:**

## I. INSURING AGREEMENTS

(A) The Underwriter will pay on behalf of the **Insured Persons Loss** from **Claims** first made against them during the **Policy Period**, except for **Loss** which the **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

(B) The Underwriter will pay on behalf of the **Insured Entity Loss** from **Claims** first made against the **Insured Persons** during the **Policy Period** which the **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

(C) **[OPTIONAL COVERAGE]** If there is a premium charge in ITEM 5(b) of the Declarations, the Underwriter will pay on behalf of the **Insured Entity Loss** from **Claims** first made against it during the **Policy Period**.

## II. DEFINITIONS

Whenever used in this Policy:

(A) "**Application**" means the application attached to and forming part of this Policy, including any materials submitted therewith, which are on file with the Underwriter and are a part of the Policy, as if physically attached;

(B) "**Claim**" means (1) written notice received by an **Insured** that any person or entity intends to hold any **Insured** responsible for a **Wrongful Act**, or (2) a legal, injunctive or administrative proceeding against an **Insured Person** solely by reason of his or her status as such;

(C) "**Defense Expenses**" means reasonable legal fees and expenses incurred by an **Insured** in defense of a **Claim**, except that **Defense Expenses** shall not include remuneration, overhead or benefit expenses associated with any **Insured**;

(D) "**Insured**" means the **Insured Entity** and any **Insured Person**;

(E) "**Insured Entity**" means the **Parent Organization** and any **Subsidiary** as of the Inception Date, plus (1) any non-profit **Subsidiary** created or acquired during the **Policy Period** and (2), if the Underwriter agrees to provide such coverage under IV. CONDITION (G), any for-profit **Subsidiary** created or acquired during the **Policy Period**;

(F) "**Insured Person**" means any past, present or future director, officer, trustee, employee, volunteer, or any member of the staff, faculty or any duly constituted committee of the **Insured Entity**; and, in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such individual;

(G) "**Loss**" means any amount, including **Defense Expenses**, in excess of the applicable retention and not exceeding the Limit of Liability which an **Insured** is obligated to pay as a result of a **Claim**, except that **Loss** shall not include punitive or exemplary damages, the multiplied portion of any multiplied damage award, fines, taxes or penalties, and matters which are uninsurable under the law pursuant to which this Policy shall be construed;

(H) "**Parent Organization**" means the non-profit organization named in ITEM 1 of the Declarations;

(I) "**Policy Period**" means the period from the Inception Date to the Expiration Date in ITEM 2 of the Declarations or to any earlier cancelation date. Any extension of coverage under IV. CONDITION (E) shall be part of and not in addition to the **Policy Period**;

(J) "**Subsidiary**" means any entity of which the **Parent Organization** has or controls the right to elect or appoint more than fifty percent (50%) of the directors or trustees;

(K) "**Wrongful Act**" means any actual or alleged error, omission, misstatement, misleading statement or breach of duty (1) by an **Insured Person** solely in his or her capacity as such, or while serving as a director or trustee of any other non-profit entity at the express written direction of the **Insured Entity**; or (2) with respect to coverage under Insuring Agreement C, by the **Insured Entity**.

## III. EXCLUSIONS

(A) Except for **Defense Expenses**, the Underwriter shall not pay **Loss** for **Claims** brought about or contributed to in fact (1) by any dishonest or fraudulent act or omission or any willful violation of any statute, rule or law by any **Insured** or (2) by any **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled. For the purposes of determining the applicability of this III. EXCLUSION (A), no **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person**. Further, each **Insured** agrees that, if it is finally established that the Underwriter has no liability to an **Insured** for **Loss** in connection with any **Claim** by reason of this III. EXCLUSION (A), such **Insured** will repay the Underwriter upon demand all **Defense Expenses** paid on behalf of such **Insured** in connection with such **Claim**.

(B) The Underwriter shall not pay **Loss**, including **Defense Expenses**, for **Claims**:

(1) for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof;

(2) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged generation, storage, transportation, discharge, dispersal, escape, treatment, removal or disposal of any pollutant or contaminant, including without limitation waste, infectious or otherwise, and medical and pharmaceutical supplies;

(3) by or at the behest of the **Insured Entity**, except that this exclusion shall not apply to any derivative action brought totally independently of, and without the solicitation, assistance, participation or intervention of, any of the **Insureds**;

(4) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation (a) underlying or alleged in any prior and/or pending litigation as of the Inception Date, or (b) which has been the subject of any notice given before the Inception Date under any policy of insurance;

(5) for any actual or alleged violations of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder, or of any similar provisions of any federal, state or local law or regulation;

(6) against any **Subsidiary** and its **Insured Persons** in such capacity for any **Wrongful Act** occurring before the date such entity became a **Subsidiary**.

## IV. CONDITIONS

(A) **No Duty to Defend; Advancement of Defense Expenses:**

(1) It shall be the duty of the **Insureds** and not the duty of the Underwriter to defend **Claims**. No **Defense Expenses** shall be incurred and no settlement of any **Claim** shall be made without the Underwriter's consent, such consent not to be unreasonably withheld.

(2) The Underwriter shall, upon written request by an **Insured**, pay on a current basis **Defense Expenses** which are otherwise payable under this Policy, except to the extent that such **Defense Expenses** are being paid under the terms of any other policy or policies of insurance.

(B) **Other Insurance; Other Indemnification:**

This Policy shall be excess of and not contribute with (1) other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically in excess of this Policy, and (2) indemnification to which an **Insured** is entitled from any entity other than the **Insured Entity**. This Policy shall not be subject to the terms of any other insurance.

(C) **Limit of Liability; Retention; Payment of Loss:**

(1) The amount stated in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Underwriter under the Policy for all **Loss** resulting from all **Claims** made during the **Policy Period**, regardless of the time of payment by the Underwriter. **Defense Expenses** shall be part of and not in addition to such Limit of Liability, and payment of **Defense Expenses** by the Underwriter shall reduce such Limit of Liability.

(2) All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events shall be deemed to be a single **Claim** made at the time the earliest such **Claim** is made. A **Claim** shall be deemed made when the Underwriter is notified under IV. CONDITION (F) or when such **Claim** is first made or asserted against an **Insured**, whichever occurs first.

(3) If **Loss** from a **Claim** is covered under more than one Insuring Agreement, the applicable retention stated in ITEM 4 of the Declarations shall be applied separately to that part of the **Loss** covered by each Insuring Agreement, and the sum of such retentions shall be the retention applicable to such **Claim**. The total retention shall not exceed the largest retention stated in ITEM 4 of the Declarations. For purposes of determining the applicable retentions, **Loss** applicable to Insuring Clause B includes that for which indemnification by the **Insured Entity** is legally permissible, whether or not actual indemnification is made, except where such indemnification is not made by the **Insured Entity** solely by reason of its financial insolvency.

(4) Except for the payment of **Defense Expenses** as provided in IV. CONDITION (A)(2), the Underwriter shall pay or reimburse **Loss** only upon the final disposition of any **Claim**.

(D) **Cooperation; Subrogation:**

In the event of a **Claim**, the **Insureds** will provide the Underwriter with all information, assistance and cooperation that the Underwriter reasonably requests, and will do nothing that may prejudice the Underwriter's position or potential or actual rights of recovery. In the event of payment, the Underwriter shall be subrogated to all of the rights of recovery of the **Insureds**, who shall execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the Underwriter effectively to bring suit in their name.

(E) **Discovery Period:**

If the Policy is canceled for any reason other than non-payment of premium or is not renewed by the Underwriter or the **Parent Organization**, the **Insureds** shall have the right to an extension of the coverage granted by this Policy for a period of 365 days after the date such cancelation or non-renewal takes effect (the "Termination Date"), but only with respect to any **Wrongful Act** before the Termination Date. The premium for such extension of coverage shall be forty percent (40%) of the total premium set forth in ITEM 5(c) of the Declarations, and must be paid within thirty (30) days of the Termination Date. Such extension of coverage shall be part of and not in addition to the **Policy Period**, and the Underwriter's aggregate Limit of Liability in respect of all **Claims** made during the **Policy Period**, including such extension of coverage, shall not exceed the available Limit of Liability set forth in ITEM 3 of the Declarations.

(F) **Notice of Claim or Circumstances:**

(1) If during the **Policy Period** any **Claim** is made, as a condition precedent to their right to payment the **Insureds** shall give the Underwriter written notice by certified mail of such **Claim** as soon as practicable after such **Claim** is first made.

(2) If during the **Policy Period** an **Insured** first becomes aware of any circumstances which may subsequently give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter but before the expiration or cancelation of the Policy, gives the Underwriter written notice by certified mail of such circumstances with full particulars of the specific **Wrongful Act** involved, then any **Claim** subsequently made against an **Insured** arising out of such **Wrongful Act** shall be deemed made during the **Policy Period**.

(G) **Adjustments:**

If after the Inception Date the **Insured Entity** acquires or assumes all or substantially all of the equity, assets or liabilities of, or merges with, any for-profit entity, or creates a for-profit **Subsidiary**, there shall be no coverage under this Policy for **Loss** in connection with any **Claim** for **Wrongful Acts** arising out of or in any way relating to the entity, assets or liabilities acquired, assumed, merged with or created, unless (1) the Underwriter receives from the **Insured Entity** full details of such transaction or event and (2) the Underwriter, at its sole discretion, agrees by written endorsement to provide such coverage upon such terms, conditions and limitations as it may require.

(H) **Representations; Severability:**

The **Insureds** represent that the particulars and statements contained in the **Application** are true and agree that: (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the Underwriter; and (3) this Policy is issued in reliance upon the truth of such representations. The **Application** shall be construed as a separate application for coverage by each of the **Insureds**. Except for material facts or circumstances known to the person or persons who signed the **Application**, no statement in the **Application** or knowledge or information possessed by an **Insured** shall be imputed to any other **Insured** for the purpose of determining the availability of coverage.

(I) **No Action Against the Underwriter:**

(1) No action shall be taken against the Underwriter unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after adjudicatory proceedings, or by written agreement of the **Insureds**, the claimant and the Underwriter.

(2) No person or organization shall have any right under this Policy to join the Underwriter as a party to any **Claim** against an **Insured** to determine the liability of such **Insured**; nor shall the Underwriter be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**. Bankruptcy or insolvency of any of the **Insureds** or of any of their estates shall not relieve the Underwriter of any of its obligations under this Policy.

(J) **Authorization and Notices:**

The **Insureds** agree that the **Parent Organization** shall act on their behalf with respect to receiving all notices and any return premiums from the Underwriter.

(K) **Changes:**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Underwriter shall not effect a waiver or change in any part of this Policy or estop the Underwriter from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy can only be waived or changed by written endorsement.

(L) **Assignment:**

Assignment of interest under this Policy shall not bind the Underwriter without its consent.

(M) **Cancelation:**

(1) The Underwriter may not cancel this Policy except for failure to pay a premium when due, in which case ten (10) days written notice will be given.

(2) The **Parent Organization** may cancel this Policy only by mailing the Underwriter written notice stating when such cancelation shall be effective. In such event, the earned premium shall be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancelation is effective or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.

The Underwriter shall not be required to renew this Policy upon its expiration.

(N) **Exhaustion:**

If the Limit of Liability is exhausted by the payment of **Loss**, including **Defense Expenses**, all obligations of the Underwriter under this Policy shall be completely fulfilled and extinguished, and the Underwriter shall have no further obligations of any kind or nature whatsoever under this Policy.

(O) **Acceptance:**

The **Insureds** agree that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the Underwriter or any of its agents relating to this insurance.

(P) **Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof the Underwriter has caused this Policy to be executed on the Declarations Page.**

| | |
|---|---|
| Secretary | President |

ENDORSEMENT NO. 1
RHODE ISLAND AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

In consideration of the premium charged:

(1) The Underwriter may cancel or non-renew this Policy only by mailing or delivering to the entity named in ITEM 1 of the Declarations, at least thirty (30) days before the Expiration Date set forth in ITEM 2(b) of the Declarations, a written notice stating when, not less than thirty (30) days thereafter, such cancellation or non-renewal will be effective and containing the specific reason or reasons for cancellation or non-renewal.

(2) The "Cancellation" section of this Policy is hereby modified to the following extent:

"If cancellation of this Policy is effected on behalf of the entity named in ITEM 1 of the Declarations by a premium finance company pursuant to the terms of a financing agreement containing a power of attorney, such earned premium shall be computed pro-rata and not in accordance with the short-rate table."

(3) Subject to all of the other provisions of this Policy, the entity named in ITEM 1 of the Declarations may exercise its right to purchase a Discovery Period within thirty (30) days after the end of the Policy Period.

(4) If any person or entity entitled to coverage under this Policy is a defendant in any civil action as to which this Policy provides coverage and the plaintiff in such action makes a written offer to the Underwriter to settle the action for an amount equal to or less than the then-available limit of liability applicable under this Policy to Loss from such Claim, then, if the Underwriter rejects such offer, the term "Loss" will include, and the Underwriter will be liable for, all interest due on any otherwise covered judgment against a person or entity entitled to coverage under this Policy entered by the court in such action, even if the amount of such interest would, when added to the amount of any other Loss previously paid under this Policy, exceed the then-available limit of liability applicable under this Policy to Loss from such Claim. A written offer, as described above, will be presumed to have been rejected if the Underwriter does not respond in writing within thirty (30) days.

(5) The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

## RIDER TO APPLICATION - RHODE ISLAND APPLICANTS ONLY

PARAGRAPH (B) ON PAGE 3 IS REPLACED BY THE FOLLOWING:

(B) THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES SHALL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED, BY AMOUNTS INCURRED AS "DEFENSE EXPENSES" AND, IN THAT EVENT, THE UNDERWRITER IS NOT LIABLE FOR "LOSS" COSTS IN EXCESS OF THE LIMIT OF LIABILITY, AND THAT "DEFENSE EXPENSES" SHALL BE SUBJECT TO THE DEDUCTIBLE AMOUNT; AND

THE FOLLOWING PARAGRAPH IS ADDED:

(D) THE PARENT ORGANIZATION HAS THE RIGHT, UPON WRITTEN REQUEST TO THE UNDERWRITER, TO AN ACCOUNTING OF DEFENSE EXPENSES.

Acknowledged by ______________________________________
Chairman and/or President Signature

## ENDORSEMENT NO. 2
## ACQUISITION ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Section II. Definitions (E) is amended to read as follows:

"(E) "Insured Entity" means the Parent Organization and any for-profit or non-profit Subsidiary as of the Inception Date, plus (1) any non-profit Subsidiary created or acquired during the Policy Period, (2) if The Underwriter agrees to provide such coverage under IV. Condition (G), any for-profit Subsidiary created or acquired during the Policy Period and (3)

Miriam Women's Association

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 3
BODILY INJURY/PROPERTY DAMAGE EXCLUSION

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Section III. Exclusions (B) (1) is amended to read as follows:

"(1) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

# ENDORSEMENT NO. 4
# NON PYRAMIDING ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged:

(1) If a Claim is made against any Insured Person for a Wrongful Act in connection with his or her service, in any capacity, with any entity other than the Parent Organization or a Subsidiary, and if that Claim gives rise to coverage both under this Policy and under another policy or policies of directors' and officers' liability or other similar insurance issued by Executive Risk Indemnity Inc to any entity other than the Parent Organization, ERII's maximum aggregate limit of liability under all such policies combined for all Loss, including Defense Expenses, in respect of that Claim shall not exceed the largest single available limit of liability under any of those policies, including this Policy, as in effect as of the time such Claim is deemed to have been made.

(2) If, under the circumstances described in paragraph (1) above, Loss resulting from a Claim is covered in part under this Policy and in part under one or more other policies issued by Executive Risk Indemnity Inc, the applicable retention or deductible set forth in the Declarations of each applicable policy shall be applied separately to that part of the Loss, if any, covered thereby, and the sum of the retentions or deductibles so applied shall constitute the retention or deductible applicable to all Loss resulting from such Claim.

(3) Nothing in this endorsement is intended, nor shall it be construed, to obligate or require the payment of Loss, including Defense Expenses, under this Policy in any amount exceeding the available Limit of Liability under this Policy.

(4) The Parent Organization agrees, on its own behalf and on behalf of all Insureds, that ERII may, at its sole discretion, require any controversy or dispute which may arise out of or relate to the application of this endorsement, including but not limited to any allocation of Loss between or among applicable policies, to be submitted to binding arbitration in accordance with the rules of the American Arbitration Association, and that judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereover.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 5
OUTSIDE DIRECTORS LIABILITY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, the term "Wrongful Act" will also include any actual or alleged error, omission, misstatement, misleading statement or breach of duty by an Insured Person while serving at the express written direction of the Insured Entity in connection with one or more of the joint ventures or partnerships set forth below, if the Insured Entity then has an equity interest in such joint venture or partnership:

Name of Joint Venture or Partnership

North Main Imaging, Inc.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 6
RENEWAL CREDIT ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

In consideration of the Parent Organization's commitment as described in paragraph (2) below and only if the conditions precedent set forth in paragraph (1)(b) below have been satisfied:

(1) The Underwriter will renew this Policy under the same terms, conditions, limitations and endorsements of this Policy (including the Limit of Liability, premium and retentions) as in effect immediately prior to the Expiration Date, except that:

(a) The Underwriter shall retain the sole option to determine whether this endorsement shall be attached to and form part of any renewal policy; and

(b) The Underwriter's obligation to renew this Policy as provided in this paragraph is subject to the satisfaction of the following conditions precedent:

(i) the premium for such renewal must be paid prior to the Expiration Date of this Policy;

(ii) no Insured shall have given notice to the Underwriter, under this Policy or under any policy of which this Policy is a renewal or replacement, of any Claim or of any circumstance which may subsequently give rise to a Claim as to which the Underwriter shall have paid Loss or established loss reserves;

(iii) during the Policy Period, the Parent Organization shall not have been acquired by or merged into another entity such that the Parent Organization was not the surviving entity; nor shall there have been any receiver, conservator or similar official appointed as to the Parent Organization; nor shall there have been a change of 50% or more of the membership of the Parent Organization's board of directors or trustees; and

(iv) there shall have been no material change in the Parent Organization's financial condition during the Policy Period.

(2) In consideration of the Underwriter's commitment as described in paragraph (1) above and by acceptance of this endorsement, the Parent Organization agrees:

(a) to accept a renewal of this Policy if the conditions precedent set forth in paragraph (1)(b) above have been satisfied; and

(b) to accept a renewal of this Policy under the terms and conditions set forth in paragraph (1) above if the Underwriter, in its sole discretion, offers such renewal even though the conditions precedent set forth in paragraph (1)(b) above have not been satisfied.

(3) Nothing in this endorsement is intended, nor shall it be construed, to prevent the Underwriter and the Parent Organization from agreeing to a renewal of this Policy under mutually agreeable terms, conditions, limitations and endorsements which may differ, in whole or in part, from those set forth in this endorsement.

(4) Upon any renewal of this Policy under the terms and conditions set forth in paragraph (1) above, the Parent Organization will receive a "renewal credit" in the form of a return of premium in an amount equal to fourteen and one-half percent (14.5%) of the premium paid for such renewal; provided, that the payment to the Parent Organization of such "renewal credit" shall be deemed not to reduce the amount of the premium for such renewal policy as set forth in Item 5 of its Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

______________________________
Authorized Representative

ENDORSEMENT NO. 7

SPOUSAL EXTENSION ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged:

(1) The coverage afforded under this Policy shall, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to Loss resulting from a Claim made against a person who, at the time the Claim is made, is a lawful spouse of an Insured Person, but only if:

(a) the Claim against such spouse results from a Wrongful Act actually or allegedly committed by the Insured Person to whom the spouse is married; and

(b) such Insured Person and his or her spouse are represented by the same counsel in connection with such Claim.

(2) No spouse of an Insured Person shall, by reason of this endorsement, have any greater right to coverage under this Policy than the Insured Person to whom such spouse is married.

(3) The Underwriter shall not be liable under this endorsement to make any payment of Loss in connection with any Claim against the spouse of an Insured Person for any actual or alleged act, error, omission, misstatement, misleading statement, omission or breach of duty by such spouse.

All other terms, conditions and limitations of this Policy shall remain unchanged.

______________________________

Authorized Representative

ENDORSEMENT NO. 8
PRIOR AND PENDING LITIGATION ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

In consideration of the premium charged, Section III. Exclusions (B)(4) is amended to read as follows:

"(4) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation (a) underlying or alleged in any prior or pending litigation as of November 2, 1987, with respect to Claims against any Insured Person, (b) underlying or alleged in any prior or pending litigation as of December 15, 1992, with respect to Claims against the Insured Entity, or (c) which has been the subject of any notice given before the Inception Date under any policy of insurance;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 9
OUTSIDE DIRECTORS LIABILITY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

(1) Section IV. Condition (G) is amended to read as follows:

(G) ADJUSTMENTS:

If after the Inception Date the Insured Entity acquires or assumes all or substantially all of the equity, assets or liabilities of, or merges with, any for-profit entity, or creates a for-profit Subsidiary, for 90 days after the effective date of such transaction the coverage granted by this Policy shall extend to Loss from Claims for Wrongful Acts occurring after the effective date of such transaction or event which arise out of or relate to the entity, assets or liabilities acquired, assumed, merged with or created. After the expiration of such 90-day period, there shall be no coverage under this Policy for any such Loss, unless (1) within such 90-day period, the Underwriter receives from the Insured Entity full details of such transaction or event and (2) The Underwriter, at its sole discretion, agrees by written endorsement to provide such coverage upon such terms, conditions and limitations as it may require.

(2) If after the Inception Date the Insured Entity first acquires an equity interest in any joint venture, for 90 days after the effective date of such acquisition the coverage granted by this Policy shall extend to Loss from Claims for any actual or alleged error, omission, misstatement, misleading statement or breach of duty by an Insured Person serving at the express written direction of the Insured Entity as a director, officer, trustee, regent or governor of such joint venture. After the expiration of such 90-day period, there shall be no coverage under this Policy for any such Loss, unless (1) within such 90-day period, the Underwriter receives from the Insured Entity full details with respect to such joint venture and (2) The Underwriter, at its sole discretion, agrees by written endorsement to provide such coverage upon such terms, conditions and limitations as it may require.

(3) Section II. Definition (K) is amended to read as follows:

(K) "Wrongful Act" means any actual or alleged error, omission, misstatement, misleading statement or breach of duty:

(1) by an Insured Person solely in his or her capacity as such; or

(2) by an Insured Person while serving at the express written direction of the Insured Entity as a director or trustee of any other non-profit entity; or

(3) by an Insured Person while serving at the express written direction of the Insured Entity as a director, officer, trustee, regent or governor of any joint venture in which the Insured Entity had an equity interest on or before December 15, 1992; or

(4) with respect to coverage under Insuring Agreement C, by the Insured Entity.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 10
INSURANCE COMPANY ERRORS AND OMISSIONS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged:

1. Whenever used in this Policy, **"Insurance Contract"** means any policy of insurance, reinsurance or bond or indemnity, including but not limited to annuities, endowments, pension contracts and risk management self-insurance programs, pools or similar programs.

2. The Underwriter shall not pay **Loss,** including **Defense Expenses,** for **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the ownership, control or operations of Rhode Island Hospital Physician Organization, Miriam PHO, RI Risk Management Foundation and R.I.S.E., including without limitation any of the following activities by or on behalf of Rhode Island Hospital Physician Organization, Miriam PHO, RI Risk Management Foundation and R.I.S.E.:

   (a) the actual or alleged refusal to renew or the cancellation of any **Insurance Contract,** or

   (b) any actual or alleged failure or refusal to pay, or delay in the payment of benefits due or alleged to have been due, under any **Insurance Contract,** or

   (c) any actual or alleged lack of good faith or unfair dealing in the handling of any claim or obligation under any **Insurance Contract,** or the brokering or underwriting of insurance policies or risks, or

   (d) the actual or alleged conduct of any **Insured** as insurance agent or insurance broker in the negotiation, placement or maintenance of any **Insurance Contract,** or

   (e) the failure to effect or maintain reinsurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

______________________________
Authorized Representative

ENDORSEMENT NO. 11
PRIOR ACTS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

In consideration of the premium charged:

(1) Subject to paragraph (2) of this endorsement, Section III. Exclusion (B)(6) shall not apply to Claims against any Subsidiary listed below or its Insured Persons:

Newport Healthcare Corp.

(2) The Underwriter's maximum aggregate limit of liability under this Policy for all Loss, including Defense Expenses for all Claims made during the Policy Period to which Section III. Exclusion (B)(6) would have applied but for paragraph (1) above shall be $5,000,000.00, which amount shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations. Payment by the Underwriter of any Loss, including Defense Expenses, in respect of such Claims, subject to the $5,000,000.00, sub-limit set forth above, shall also reduce the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations applicable to all Claims under the Policy.

(3) The Underwriter shall not pay Loss, including Defense Expenses, for Claims against any Subsidiary listed in paragraph (1) above or its Insured Persons based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation underlying or alleged in any prior and/or pending litigation as of January 17, 1988.

All other terms, conditions and limitations of this Policy shall remain unchanged.

____________________________
Authorized Representative

ENDORSEMENT NO. 12
PRIOR AND PENDING LITIGATION EXCLUSION

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Section III. Exclusions (B) (4) is amended to read as follows:

"(4) based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation:

(a) underlying or alleged in any prior or pending litigation as of November 2, 1987, with respect to Claims against the Insured Persons of Rhode Island Hospital or Miriam Corporation (of September 11, 1988)

(b) underlying or alleged in any prior or pending litigation as of December 15, 1992, with respect to Claims against the Insured Entity, Miriam Corporation.

(c) underlying or alleged in any prior or pending litigation as of August 9, 1994, with respect to all other Claims, or

(d) which has been the subject of any notice given before the Inception Date under any policy of insurance."

All other terms, conditions and limitations of this Policy shall remain unchanged.

______________________________
Authorized Representative

## ENDORSEMENT NO. 13
## PRIOR ACTS EXCLUSION

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

In consideration of the premium charged, the definition of "Insured Entity" shall be deemed to include any entity which was, but ceased to be, a Subsidiary prior to the Inception Date; provided, however, that the Underwriter shall not pay Loss, including Defense Expenses, for Claims against any such entity or its Insured Persons in such capacities based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Wrongful Act occurring during any time in which such entity was not a Subsidiary.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 14
EMPLOYMENT PRACTICES LIABILITY (ENTITY) ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

Policy No. 751-080581-97
Issued to Lifespan Corporation
Issued by Executive Risk Indemnity Inc.

In consideration of the premium charged:

(1) Solely with respect to Claims against the Insured Entity:

(a) except for Claims for Employment Practices Wrongful Acts, the Underwriter shall not pay Loss, including Defense Expenses, for Claims for any actual or alleged liability under any contract or agreement, except for liability which would have attached even in the absence of such contract or agreement; and

(b) except for Defense Expenses, the Underwriter shall not pay Loss resulting from any portion of a Claim seeking relief or redress in any form other than money damages.

(2) The term "Loss" shall not include any salary, wages or other employment-related benefits which the Insured Entity is liable to pay any employee:

(a) under a written contract either to commence or continue employment or to make any payment in the event of a termination of employment; or

(b) by operation of the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing.

(3) The term "Wrongful Act" shall also include an Employment Practices Wrongful Act by an Insured.

(4) "Employment Practices Wrongful Act" will mean any actual or alleged:

(a) wrongful termination, whether actual or constructive, of the employment of, or demotion of, or failure or refusal to hire or promote, any person;

(b) employment discrimination, including any failure or refusal to hire any person, or discharge of or other discrimination against any person with respect to his or her compensation or any of the terms, conditions or privileges of his or her employment, or any limitation, segregation or classification of employees or applicants for employment in any way which would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy or other protected status;

(c) sexual harassment, including unwelcome sexual advances, requests for sexual favor or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that interferes with performance; or

(d) retaliatory treatment against an employee of the Insured Entity on account of such employee's exercise or attempted exercise of his or her rights under law.

(5) Section III. Exclusion (B)(1), as amended, shall not apply to Loss, including Defense Expenses, resulting from allegations of mental anguish or emotional distress to the extent that such allegations are made as part of a Claim:

(a) for an Employment Practices Wrongful Act; and/or

(b) for Peer Review Practices.

For the purposes of this endorsement, the term "Peer Review Practices" means the process of evaluating, by members of a formal, duly constituted professional review board or committee, any individual or entity for the purpose of selecting, employing, contracting with or credentialing providers of medical services.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 15
AMEND DEFINITION OF "LOSS" TO INCLUDE
PUNITIVE DAMAGES (WITH SUBLIMIT)

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged:

(1) With respect only to Claims against the Insured Persons under Section I Insuring Agreements (A) and (B), the definition of "Loss" set forth in Section II Definitions is amended to include punitive or exemplary damages, where insurable by law, in an amount not exceeding the sum of $2,500,000.00, which amount is included within, and not in addition to, the Underwriter's maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations.

(2) With respect to Claims against the Insured Entity under Section I Insuring Agreement (C), if applicable, the definition of "Loss" set forth in Section II Definitions shall remain unchanged.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

# ENDORSEMENT NO. 16
# AMEND DEFINITION OF INSURED ENTITY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged:

(1) Subject to the limitations set forth in paragraphs (2) and (3) below, each of the joint ventures set forth below shall be deemed to be included within the term "Insured Entity," but only during such time or times as the Parent Organization has an equity interest therein:

Rhode Island PHO and Miriam PHO, Inc.

(2) There shall be no coverage under Section I. Insuring Agreement (C) in respect of any Claim against any entity identified in paragraph (1) of this endorsement.

(3) The Underwriter's maximum aggregate limit of liability for all Loss, including Defense Expenses, for all Claims made during the Policy Period against the Insured Persons of any of the entities identified in paragraph (1) of this endorsement shall be $10,000,000.00, which amount shall be part of and not in addition to the $25,000,000.00 maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations applicable to all Claims made during the Policy Period. Payment by the Underwriter of Defense Expenses in respect of Claims against the Insured Persons of any of the entities identified in paragraph (1) of this endorsement shall reduce the $10,000,000.00 sub-limit of liability applicable to such Claims.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

## ENDORSEMENT NO. 17
## BROAD NUCLEAR EXCLUSION

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged no coverage will be available under this Policy for Loss, including Defense Expenses, for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged nuclear reaction, nuclear radiation, radioactive contamination, or radioactive substance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

ENDORSEMENT NO. 18
AMEND DEFINITION OF "LOSS" TO COVER EXCESS BENEFIT TRANSACTION EXCISE TAX

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged:

(1) For the purposes of this endorsement:

(a) "Excess Benefit Transaction Excise Tax" means any excise tax imposed by the Internal Revenue Service on an Insured Person who is an Organization Manager (as defined below) as a result of such Insured Person's participation in an Excess Benefit Transaction (as defined below);

(b) "Organization Manager" means an "organization manager" as that term is defined in Section 1311 of the Taxpayer Bill of Rights 2, P.L. 104-168 (the "Act");

(c) "Excess Benefit Transaction" means an "excess benefit transaction" as that term is defined in the Act; and

(d) "Disqualified Person" means a "disqualified person" as that term is defined in the Act.

(2) Subject to paragraph (3) below and only where insurable by law, the definition of "Loss" set forth in Section II Definitions of the Policy is amended to include any Excess Benefit Transaction Excise Tax in an amount not exceeding $10,000.

(3) The coverage afforded by paragraph (2) above shall apply only if and to the extent that indemnification by the Insured Entity for Excess Benefit Transaction Excise Taxes is not expressly prohibited in the bylaws, certificate of incorporation or other organizational documents of the Insured Entity.

(4) No coverage will be available under this Policy for any excise tax imposed by the Internal Revenue Service on any Disqualified Person for any Excess Benefit Transaction.

All other terms, conditions and limitations of this Policy shall remain unchanged.

______________________________
Authorized Representative

ENDORSEMENT NO. 19
PREMIUM CREDIT RENEWAL ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 1, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

As a result of the Underwriter's favorable loss experience with Lifespan Corporation, and in full satisfaction of the Underwriter's obligations under its agreement with Lifespan Corporation dated November 7, 1994, the Underwriter hereby provides a return premium of $24,731.00, for the Parent Organization's 1997-1998 policy premium.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Paul L. Romano

Authorized Representative

ENDORSEMENT NO. 20
DELETE AN ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 31, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Endorsement No. 2 (D21178,2/94) is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 21
ACQUISITION ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 31, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Section II. Definitions (E) is amended to read as follows:

"(E) "Insured Entity" means the Parent Organization and any for-profit or non-profit Subsidiary as of the Inception Date, plus (1) any non-profit Subsidiary created or acquired during the Policy Period, (2) if The Underwriter agrees to provide such coverage under IV. Condition (G), any for-profit Subsidiary created or acquired during the Policy Period and (3) Miriam Women's Association; (4) Health Strategies Group, Inc.; (5) Liability Limited, Inc.; (6) New England Medical Center Insurance Company of Vermont, Inc.; (7) New England Medical Center Insurance Company

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 22
DELETE AN ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 31, 1998, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Endorsement No. 21 (D21178,2/94) is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 23
ACQUISITION ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 31, 1998, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Section II. Definitions (E) is amended to read as follows:

"(E) "Insured Entity" means the Parent Organization and any for-profit or non-profit Subsidiary as of the Inception Date, plus (1) any non-profit Subsidiary created or acquired during the Policy Period, (2) if The Underwriter agrees to provide such coverage under IV. Condition (G), any for-profit Subsidiary created or acquired during the Policy Period and (3) Health Strategies Group, Inc.; (4) Limited Liability, Inc.; (5) New England Long-Term Care, Inc.; (6) New England Medical Center Insurance Company of Vermont, Inc.; (7) New England Medical Center Insurance Company

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 24
DELETE AN ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 31, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Endorsement No. 23 (D21178,2/94) is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative

ENDORSEMENT NO. 25
ACQUISITION ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on October 31, 1997, forms part of

| | |
|---|---|
| Policy No. | 751-080581-97 |
| Issued to | Lifespan Corporation |
| Issued by | Executive Risk Indemnity Inc. |

In consideration of the premium charged, Section II. Definitions (E) is amended to read as follows:

"(E) "Insured Entity" means the Parent Organization and any for-profit or non-profit Subsidiary as of the Inception Date, plus (1) any non-profit Subsidiary created or acquired during the Policy Period, (2) if The Underwriter agrees to provide such coverage under IV. Condition (G), any for-profit Subsidiary created or acquired during the Policy Period and (3) Health Strategies Group, Inc.; (4) Limited Liability, Inc.; (5) New England Long-Term Care, Inc.; (6) New England Medical Center Insurance Company of Vermont, Inc.; (7) New England Medical Center Insurance Company; (8) Miriam Women's Association

All other terms, conditions and limitations of this Policy shall remain unchanged.

John P Kearney

Authorized Representative