UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EXECUTIVE RISK INDEMNITY INC., Plaintiff, v. LIFESPAN CORPORATION, and RHODE ISLAND HOSPITAL Defendants. | **Civil Action No: 05-169-T** |

**PLAINTIFF EXECUTIVE RISK INDEMNITY INC.'S MOTION TO SEVER AND STAY COUNT III OF DEFENDANTS' COUNTERCLAIM ALLEGING BAD FAITH**

Pursuant to F.R.C.P. 42(b), plaintiff, Executive Risk Indemnity Inc. ("ERII"), hereby moves to sever and stay all proceedings, including discovery, on the bad faith counterclaim (Count III) brought by Lifespan Corporation and Rhode Island Hospital pending resolution of the coverage issues raised in ERII's complaint for declaratory relief and the declaratory judgment and breach of contract counterclaims (Counts I and II) asserted by Lifespan and RIH (collectively, "Lifespan"). Alternatively, if the Court declines to sever and stay all proceedings on Lifespan's bad faith counterclaim, ERII respectfully requests that the Court defer Lifespan from seeking discovery on its bad faith counterclaim until the threshold coverage issues have been resolved.

The grounds for this motion, as set forth more fully in the accompanying Memorandum

of law, include the following:

1. Executive Risk Indemnity Inc. ("ERII") brings this action for declaratory relief concerning the parties' dispute over the availability of coverage under a Directors, Officers and Trustees Liability Insurance Policy Including Healthcare Organization Reimbursement Policy issued to Lifespan for the period October 1, 1997 through October 1, 1998 (the "Policy") for Lifespan's request for reimbursement of: (a) $625,000.00 paid to settle a civil action brought by the United States of America under the Federal Civil False Claims Act, 31 U.S.C. §§3729-3733, in United States District Court for the District of Rhode Island as C.A. No. 01-243-ML (the "False Claims Act Action"); (b) defense costs allegedly incurred by Lifespan in responding to a preceding investigative subpoena; and (c) certain fees and costs which ERII had declined to reimburse under its Litigation Management Guidelines.[1]

2. Lifespan's recently filed answer asserts three counterclaims. Counts I and II assert claims for declaratory relief and breach of contract which turn on the coverage issues raised in ERII's complaint. Count III essentially alleges that ERII's refusal to provide the coverage requested by Lifespan constitutes bad faith in violation of R.I. Gen. Laws §27-9.1-1 *et seq.* and R.I. Gen. Laws §9-1-33. In its recently filed answer to Lifespan's counterclaims, ERII denies engaging in any conduct toward Lifespan which could be construed as bad faith. ERII contends

---

[1] ERII reimbursed Lifespan for $128,448.98 in **Defense Expenses** concerning the False Claims Act Action but denied indemnification coverage for amounts paid by Lifespan to settle that Action. (Phrases shown in bold are defined Policy terms).

that Lifespan added its bad faith counterclaim in an attempt to gain leverage in this otherwise straightforward coverage dispute.

3. Under Fed. R. Civ. P. 42(b) and well settled Rhode Island law (addressed in ERII's accompanying Memorandum), Lifespan's bad faith counterclaim (Count III) should be severed and stayed pending resolution of the threshold question of whether the Policy affords coverage for the amounts sought by Lifespan. The bifurcation and stay of bad faith claims promotes judicial economy and avoids or defers potentially unnecessary discovery and motion practice concerning bad faith allegations that will in all likelihood be rendered moot if the Court upholds ERII's coverage position or determines that ERII's coverage determination, even if mistaken, was based on a "fairly debatable" interpretation of the Policy.

4. Bad faith claims should also be bifurcated and stayed pending resolution of the threshold coverage issues to safeguard insurers from the potentially unnecessary and prejudicial disclosure of their claims file, including documents protected by the work product and/or attorney-client privileges.

WHEREFORE, Executive Risk Indemnity Inc. respectfully requests that this Court grant its motion to bifurcate and stay all proceedings, including discovery, on Lifespan Corporation's and Rhode Island Hospital's bad faith counterclaim (Count III) pending resolution of the parties' declaratory judgment claims and Lifespan's breach of contract counterclaim. Alternatively, if the Court declines to grant ERII's motion in its entirety, ERII respectfully requests that it direct Lifespan to refrain from conducting any discovery on its bad faith counterclaim pending adjudication of the parties' declaratory judgment claims and Lifespan's breach of contract

counterclaim.

DATED: June 29, 2005

EXECUTIVE RISK INDEMNITY INC.,
By its attorneys,

Preston W. Halperin (# 5555)
Randall L. Souza (# 4082)
SHECHTMAN HALPERIN SAVAGE, LLP
86 Weybosset Street
Providence, RI 02903
(401) 272-1400
(401) 272-1403(fax)

Of Counsel:
Barbara A. O'Donnell
Elizabeth Sackett
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108
(617) 557-5900
(617) 557-5999 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June 2005, I have served the foregoing document upon all parties to this action by sending a copy by first class mail, postage prepaid, to defendant/counterclaim plaintiffs' counsel of record in his action:

David P. Whitman, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 029-3

Randall L. Souza (# 4082)

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| EXECUTIVE RISK INDEMNITY INC., Plaintiff, | |
| v. | Civil Action No: 05-169-T |
| LIFESPAN CORPORATION, and RHODE ISLAND HOSPITAL Defendants. | |

**PLAINTIFF EXECUTIVE RISK INDEMNITY INC.'S MEMORANDUM IN SUPPORT OF MOTION TO SEVER AND STAY BAD FAITH COUNTERCLAIM**

Plaintiff, Executive Risk Indemnity Inc. ("ERII"), submits this Memorandum in support of its accompanying Motion to sever and stay all proceedings, including discovery, on the bad faith counterclaim (Count III) brought by Lifespan Corporation ("Lifespan") and Rhode Island Hospital ("RIH"), pending resolution of the coverage issues raised in ERII's complaint for declaratory relief and the declaratory judgment and breach of contract counterclaims (Counts I and II) asserted by Lifespan and RIH (collectively, "Lifespan"). Alternatively, if the Court declines to sever and stay all proceedings on Lifespan's bad faith counterclaim, ERII respectfully requests that the Court defer Lifespan from seeking discovery on its bad faith counterclaim until the threshold coverage issues have been resolved.

ERII's motion relies on well-settled Rhode Island law encouraging courts to sever and stay bad faith claims which require a threshold determination of the potential availability of coverage under the applicable insurance policy. As noted in the decisions addressed below, the bifurcation and stay of bad faith claims promotes judicial economy and avoids or defers

potentially unnecessary and prejudicial discovery and motion practice concerning bad faith allegations that will in all likelihood be rendered moot if the Court upholds an insurer's coverage position or determines that the insurer's coverage determination, even if mistaken, was based on a "fairly debatable" interpretation of the policy.

## A. The Parties' Dispute Over the Availability of Coverage for Lifespan's False Claims Act Action Settlement and Certain Defense Costs

In April 2005, plaintiff, Executive Risk Indemnity Inc. ("ERII") filed this action seeking a declaration that coverage is not available under a Directors, Officers and Trustees Liability Insurance Policy Including Healthcare Organization Reimbursement Policy issued to Lifespan for the period October 1, 1997 through October 1, 1998 (the "Policy") for Lifespan's request for reimbursement of (a) $625,000.00 paid to settle a civil action brought by the United States of America under the Federal Civil False Claims Act, 31 U.S.C. §§3729-3733, in United States District Court for the District of Rhode Island as C.A. No. 01-243-ML (the "False Claims Act Action"); (b) defense costs allegedly incurred in responding to a preceding investigative subpoena; and (c) certain fees and costs which ERII had declined to reimburse under its Litigation Management Guidelines.[1]

On or around June 6, 2005, defendants filed their answer with the following three counterclaims against ERII: (1) declaratory judgment concerning their alleged entitlement to coverage under the Policy for the $625,000.00 paid to settle the False Claims Act Action and $95,668.00 allegedly incurred as **Defense Expenses** for the False Claims Act Action and preceding Subpoena, with interest and attorneys' fees incurred in this action (Count I); (2) breach of contract seeking the same relief (Count II); and (3) alleged bad faith conduct in violation of

[1] ERII reimbursed Lifespan for $128,448.98 in **Defense Expenses** concerning the False Claims Act Action but denied indemnification coverage for amounts paid by Lifespan to settle that Action. (Phrases shown in bold are defined Policy terms).

R.I. Gen. Laws §27-9.1-1 *et seq*. and R.I. Gen. Laws §9-1-33, with a request for all amounts allegedly owed under the Policy, plus attorneys fees and punitive damages (Count III).

The pivotal question in this Action is whether Lifespan is entitled to coverage under the Policy for its $625,000.00 settlement of the False Claims Act Action and the legal fees and costs which ERII has declined to reimburse because (a) they were incurred in responding to a preceding Subpoena which ERII determined did not qualify as a **Claim**, and/or (b) are not eligible for reimbursement under ERII's written Litigation Management Guidelines.

Before this Action was commenced, the parties exchanged detailed correspondence regarding their respective coverage positions, including their analysis of relevant legal authorities. This coverage dispute is well suited for resolution by summary judgment with limited, if any, factual discovery.

In its motion for summary judgment, ERII will demonstrate that Lifespan is not entitled to reimbursement for amounts paid to settle the False Claims Act Action because the only relief sought in that Action consisted of restitutionary relief, the multiplied portion of multiple damages, fines and/or penalties, none of which are covered under the Policy. ERII will further demonstrate that Lifespan is not entitled to reimbursement for legal fees or costs incurred in responding to the preceding Subpoena issued by the United States Department of Health and Human Services, Office of Inspector General, because it does not qualify as a **Claim** as defined in the Policy. ERII's summary judgment motion will also address its grounds for disallowing a small portion of the defense costs and fees Lifespan submitted for reimbursement with regard to the False Claims Act Action because they did not comply with ERII's Litigation Management Guidelines.

**B. Lifespan's Bad Faith Counterclaim Should be Severed and Stayed to Promote Judicial Efficiency and Avoid the Potentially Unnecessary and Prejudicial Disclosure of Claims File Materials**

Lifespan's bad faith claim represents a transparent attempt to leverage its position in this otherwise straightforward coverage dispute. Lifespan's bare bones bad faith claim is devoid of anything beyond conclusory allegations regarding ERII's purported failure to conduct an adequate investigation and/or engage in settlement discussions with Lifespan. Contrary to these allegations, ERII informed Lifespan in writing, both before and after Lifespan made its own decision to settle the False Claims Act Action, that the Policy did not afford indemnification coverage for the relief sought in the False Claims Act Action, and that ERII would not contribute toward any settlement of that Action. *See*, ERII's Complaint, ¶¶ 36, 41. When Lifespan thereafter elected to enter into its February 2004 written settlement agreement concerning the False Claims Act Action, it was well aware of ERII's position that coverage was not available under the Policy for amounts paid to settle or resolve the False Claims Act Action.

To avoid the need to commit judicial and litigation resources toward bad faith claims that may be rendered moot by adjudication of the parties' threshold coverage dispute, Rhode Island courts recognize that it is good practice to sever and stay bad faith claims pending resolution of coverage issues presented in declaratory judgment and breach of contract claims.

In a recent decision addressing the high threshold that plaintiffs must surmount to recover for insurer bad faith under Rhode Island law, the Rhode Island Supreme Court reiterated that "claims of insurer bad faith are severed and tried separately from the breach of insurance contract claims . . . " in this jurisdiction. *Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1010 (R.I. 2002).[2] *See also, Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997 (R.I. 1998);

[2] In *Skaling*, the court stated that a plaintiff would no longer be required, as part of its prima facie case on a bad faith claim, to offer evidence sufficient to obtain a directed verdict on its claim that the insurer had breached its

*Providence Journal Co. v. Travelers Indem. Co.*, 938 F.Supp. 1066, 1070, n.3 (D. R.I. 1996) (allowance of insurer's motion to sever bad faith claim noted without discussion).

Motions to sever and stay bad faith claims in coverage disputes are favored because "there can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance." *Bartlett*, 538 A.2d at 1000 (recommends that courts exercise their authority under Rule 42(b) to "sever the contract claim from the bad-faith claim and limit discovery to the contract claim until that claim is resolved in plaintiff's favor"). *See also, Zarella v. Minnesota Mutual Life Ins. Co.*, 824 A.2d 1249, 1261 (R.I. 2003) ("Under Rhode Island law, however, a plaintiff must first show that he or she is entitled to recover on the contract before he or she can prove that the insurer dealt with him or her in bad faith"). *See also, Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1 (1st Cir. 2000) (Insurer cannot be liable for bad faith or violation of M.G.L.c. 93A when its coverage position is fairly debatable, even if mistaken).

It is clearly in the interest of judicial economy and efficiency to sever and stay Lifespan's bad faith claim because there will be no need to reach that claim if the Court agrees with ERII's determination that the Policy does not afford coverage for the legal fees and False Claims Act Action settlement costs sought by Lifespan. *Skaling v. Aetna Ins. Co.*, 799 A.2d 997 (2002); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997 (1988). If the Court alternatively

---

contractual obligations. *Id.* at 1006. While reaffirming that "no action in bad faith can lie unless and until an insured has proven a breach of the insurance contract," the court declared the directed verdict test unduly onerous because it defeats bad faith claims whenever factual questions preclude a directed verdict, irrespective of whether the claim is otherwise well-founded. *Id.* at 1004. Signaling a possible exception to the rule that an insurer cannot be held liable for bad faith when its coverage position is "fairly debateable," the *Skaling* court stated that an insurer may be liable for bad faith if it "intentionally or recklessly failed to properly investigate a claim, or failed to subject its investigation to an appropriate cognitive evaluation and review, or otherwise acted in an oppressive and unreasonable manner." *Id.* at 1006. Revisiting this possible exception the following year, the court held that a plaintiff asserting a common law bad faith claim "must demonstrate the absence of a reasonable basis for denying the policy benefits and that defendant had knowledge or recklessly disregarded the lack of reasonable basis for denying the claim." *Zarella*, 824 A.2d at 1261.

concludes that ERII's coverage position was mistaken but was based on a "fairly debatable" interpretation of its insurance policy, Lifespan's and RIH's bad faith claim will still fail. *Id.* Under Rhode Island law, to prevail on a bad faith claim, Lifespan and RIH must demonstrate that ERII denied coverage and refused payment "without a reasonable basis in fact or in law for the denial." *Skaling*, 799 A.2d at 1010.

The very real likelihood that the resolution of the coverage issues may moot Lifespan's bad faith claim provides this Court with compelling grounds to exercise its discretionary power to sever and stay the bad faith claim under Fed.R. Civ. P. 42(b). *See, Faerber v. City of Newport*, 51 F.Supp. 2d 115 (D. R.I. 1999) (To promote economy and efficiency, court severs and stays state law claims that present a "distraction" to First Amendment claim).

Bad faith claims should also be bifurcated and stayed pending resolution of the threshold coverage issues to safeguard insurers from the potentially unnecessary and prejudicial disclosure of their claims file, including documents protected by the work product and/or attorney-client privileges. *Skaling*, 799 A.2d at 1010. As the Court explained in *Bartlett v. John Hancock*, 538 A.2d. at 1002, when a bad faith claim is asserted in conjunction with coverage claims, the bad faith claim should be severed with discovery on that claim stayed to safeguard privileged claims file materials. The Court cautioned that "[a]llowing full disclosure of the insurer's claim file based solely on plaintiff's allegation of bad faith would invite all plaintiffs to include a bad-faith claim with every breach-of-contract claim."

For these reasons, deferring potentially unnecessary discovery regarding Lifespan's bad faith counterclaim promotes efficiency and encourage the parties to engage in meaningful discovery efforts without giving Lifespan unfair access to ERII's work product and attorney-

client privileged materials regarding its coverage evaluation prior to the Court's threshold coverage determination.

If the Court resolves the coverage issues in ERII's favor, or determines that ERII's coverage position, while mistaken, was based on a plausible interpretation of the Policy, Lifespan's bad faith claim can be summarily disposed of without the need for any discovery on that Count. If the Court decides that ERII's coverage disclaimer was mistaken and did not rest on a plausible reading of its Policy, the Court and the parties will be in a better position at that juncture to evaluate the appropriate scope of discovery and pretrial briefing on the bad faith counterclaim.

No party will be prejudiced by delaying discovery regarding the bad faith claim,but ERII will be severely prejudiced if it is required to disclose privileged documents in its claims file before adjudication of the coverage issues presented by the parties' declaratory judgment and breach of contract claims. It is therefore in the best interest of the Court and the parties to resolve the coverage issues before committing potentially unnecessary time and resources toward discovery and motion practice on the bad faith claim that may well be mooted by the coverage determination.

For all of these reasons, Lifespan and RIH should not be permitted to proceed with their bad faith counterclaim until and unless they can establish that ERII acted unreasonably in denying coverage for the amounts paid to settle the False Claims Act Action and the disputed legal fees.

WHEREFORE, Executive Risk Indemnity Inc. respectfully requests that this Court grant its motion to bifurcate and stay all proceedings, including discovery, on Lifespan Corporation's and Rhode Island Hospital's bad faith counterclaim (Count III) pending resolution of the parties'

declaratory judgment claims and Lifespan's breach of contract counterclaim. Alternatively, if the Court declines to grant ERII's motion in its entirety, ERII respectfully requests that it direct Lifespan to refrain from conducting any discovery on its bad faith counterclaim pending adjudication of the parties' declaratory judgment claims and Lifespan's breach of contract counterclaim.

DATED: June 29, 2005

EXECUTIVE RISK INDEMNITY INC.,
By its attorneys,

Preston W. Halperin (# 5555)
Randall L. Souza (# 4082)
SHECHTMAN HALPERIN SAVAGE, LLP
86 Weybosset Street
Providence, RI 02903
(401) 272-1400
(401) 272-1403(fax)

Of Counsel:
Barbara A. O'Donnell
Elizabeth Sackett
ROBINSON & COLE LLP
One Boston Place
Boston, MA 02108
(617) 557-5900
(617) 557-5999 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of June 2005, I have served the foregoing document upon all parties to this action by sending a copy by first class mail, postage prepaid, to defendant/counterclaim plaintiffs' counsel of record in his action:

David P. Whitman, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 029-3

Randall L. Souza (# 4082)